IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
MAY 3 1 2016
Clerk, U.S. District Court
District Of Montana
Billings

JACQUELINE M. WINKLER,

Plaintiff,

vs.

HOME DEPOT, U.S.A., Inc.,

Defendant.

CV 15-06-BLG-SPW

OPINION and ORDER

Plaintiff Jacqueline Winkler brought this action alleging that her former employer Defendant Home Depot, U.S.A., Inc. ("Home Depot") violated the Family and Medical Leave Act ("FMLA") and Montana's Wrongful Discharge from Employment Act when it terminated her employment. Both Winkler and Home Depot move for summary judgment. For reasons discussed below, the Court grants Home Depot summary judgment on Winkler's FMLA claims, but denies summary judgment on the Wrongful Discharge claim.

## I. Background

### A. Evidence Submitted by Winkler

The Court initially notes that it did not consider several of the documents submitted by Winkler. First, the Court did not consider any of the facts set forth in Winkler's Statement of Facts in Support of Motion for Summary Judgment. (Doc.

1

30.) Although L.R. 56.1(a) requires the statement of undisputed facts to be filed simultaneously with the summary judgment motion, the Court excused Winkler's error when she filed her Statement of Undisputed Facts six days late. (Doc. 36.) However, Winkler also broke the Local Rules by failing to "pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission or affidavit before the court to support each fact." L.R. 56.1(a)(2). Instead, Winkler broadly cites to documents without indicating where to find the information. For example, at ¶ 17, Winkler states:

> On May 31, 2013, Jacqueline was absent from work as a result of Home Depot's failure to follow the work restrictions set by her health care provider. Home Depot subsequently disciplined her for this absence and eventually used the absence as part of the basis for her termination. (Winkler Deposition; Defendant's Discovery Responses).

(Doc. 30 at 5.) It is not the Court's responsibility to go through Winkler's deposition and Home Depot's discovery responses to determine the source of that "fact." Winkler sought leave to file an Amended Statement of Undisputed Facts the same day that briefing on the summary judgment motions was complete, but the Court denied the request. (Doc. 51.) Because Winkler failed to comply with L.R. 56.1(a)(2), the Court will not consider the facts set forth in her Statement of Facts in Support of Motion for Summary Judgment.

Additionally, the Court will not consider Winkler's affidavit submitted in support of her summary judgment motion and in opposition to Home Depot's

2

summary judgment motion. The affidavit was submitted twice, once on January 23, 2016 (Doc. 27-15) and again on February 12, 2016 (Doc. 37-2). In both instances, the affidavit is unsigned and is not notarized. L.R. 1.5(c) requires all affidavits to be notarized and signed with a hand signature. As Winkler's affidavit is unsigned and not notarized in violation of L.R. 1.5(c), the Court will not consider it.

## B. Home Depot's Attendance Policy

Home Depot employed Winkler from September 2008 until it fired her on December 31, 2013. To put the events leading to Winkler's termination in context, the Court will first discuss Home Depot's attendance policy.

Home Depot's policies provided that adherence to work schedules was "essential" and that employees were expected to work through their scheduled shifts. (*Attendance & Punctuality Guidelines for Hourly Store Associates* ("Guidelines") at 1, Doc. 26-3 at 17; *Attendance & Punctuality HR SOP* ("SOP") at 1, Doc. 26-3 at 24.) The record is unclear about the exact interaction between the Guidelines and the SOP. (*See David Zeeck Depo. 121:2-18, 131:4-16* (Jan. 4, 2016), Doc. 48-2 at 5, 6.) The Guidelines were last revised on June 2, 2010, and the SOP was last revised on August 1, 2013. (Guidelines at 1, Doc. 26-3 at 17; SOP at 1, Doc. 26-3 at 24.) Any differences between the Guidelines and the SOP ultimately did not affect Winkler.

3

Home Depot uses a four stage progressive discipline process to enforce its attendance policy. (Guidelines at 4, Doc. 26-3 at 20; SOP at 2, Doc. 26-3 at 25.) The first step is a Coaching Session, which gives the manager an opportunity to discuss the attendance issue with the employee. (*Id.*) The Guidelines provide that a Coaching Session may be appropriate after a first unexcused absence (Guidelines at 4, Doc. 26-3 at 20), while the SOP states that a Coaching Session is required following three absences in a six month period (SOP at 2, Doc. 26-3 at 25).

The second step is a Counseling Session. (Guidelines at 4, Doc. 26-3 at 20; SOP at 2, Doc. 26-3 at 25.) A Counseling Session is a formal written notice to an employee that she is continuing to violate Home Depot's attendance policy. (Guidelines at 4, Doc. 26-3 at 20.) Under the Guidelines, a manager should conduct a Counseling Session if the employee has another attendance issue within 12 months of the Coaching Session. (Guidelines at 4-5, Doc. 26-3 at 20-21.) Under the SOP, a Counseling Session is required after the employee has three additional unexcused absences following a Coaching Session. (SOP at 2, Doc. 26-3 at 25.)

The third step is called a Final Counseling Session under the Guidelines or a Final Warning under the SOP. (Guidelines at 5, Doc. 26-3 at 21; SOP at 2, Doc. 26-3 at 25.) The Final Counseling Session is the last warning and serves as notice to the employee that the next unexcused absence will result in termination from

4

employment. (Guidelines at 5, Doc. 26-3 at 21.) Under the Guidelines, a Final Counseling Session is appropriate when there have been three to five unexcused absences in a 12 month period. (*Id.*) Under the SOP, a Final Warning is required after an employee has an unexcused absence after the Counseling Session. (SOP at 2, Doc. 26-3 at 25.)

The fourth and final step is termination. (Guidelines at 5, Doc. 26-3 at 21; SOP at 2, Doc. 26-3 at 25.) Under the Guidelines, an employee should be terminated after receiving a Final Counseling Session and where there have been five or more unexcused absences in the previous 12 month period. (Guidelines at 5-6, Doc. 26-3 at 21-22.) Under the SOP, employment should be terminated after the employee receives a Final Warning and has one additional unexcused absence. (SOP at 2, Doc. 26-3 at 25.) If all the steps under the SOP are followed, employment is terminated after eight unexcused absences. (*Id.*)

Winkler's manager David Zeeck testified that the Guidelines would have been the attendance policy in place during Winkler's employment. (*Zeeck Depo. 121:2-18, 131:4-16*, Doc. 48-2 at 5, 6.) However, Zeeck also referred to the SOP in his deposition and testified that eight absences would result in termination. (*Zeeck Depo. 132:11 – 133:6*, Doc 48-2 at 7-8.) While the Guidelines provide for termination after five or more unexcused absences, the SOP requires eight

5

unexcused absences before termination. (Guidelines at 5-6, Doc. 26-3 at 21-22; SOP at 2, Doc. 26-3 at 25.)

### C. Winkler's Employment and Termination

Home Depot hired Winkler as full time employee on September 10, 2008. (Doc. 38 at 2.) Winkler's job duties included arranging merchandise, maintaining store displays, and verifying that pricing was accurate on displays. (*Id.*) At some point during her employment, Winkler claims that her District Area Manager, Toby Wadley, told employees that he did not like employees taking time off due to injuries and that employees would be "written up" if they suffered a workplace injury. (*Jacqueline Winkler Depo. 206:7-25 (October 29, 2015)*, Doc. 37-5 at 53.) Winkler claims to know other employees who Wadley "rode hard" after they got injured. (*Winkler Depo. 207:4-8*, Doc. 37-5 at 53.)

Winkler fell at work while moving a wooden pallet on February 20, 2013. (Doc. 38 at 9.) The fall caused an injury to Winkler's left shoulder, and she filled out an injury report the next day. (Doc. 38 at 9-10.) Winkler did not immediately seek medical treatment. (*Id.*)

On April 18, 2013, Winkler received a Coaching Session for what Home Depot claimed to be attendance violations. (Doc. 38 at 6.) The Notice that documented the Coaching Session indicates that Winkler had accumulated three unexcused absences as of April 17, 2013. (*Progressive Discipline Notice (April*

*18, 2013)*, Doc. 26-3 at 33.) However, the Notice does not specify when Winkler was absent without approval, and Winkler attended work on April 17. (*Id.*; *Time Detail at 9*, Doc. 37-3 at 9.) Nonetheless, Winkler conceded in her deposition that she had three unexcused absences by the time of the Coaching Session. (*Winkler Depo. 141:1-10*, Doc. 37-5 at 37.)

Winkler missed work again on April 26 and May 9 without enough leave to cover the absences. (*Time Detail at 10*, Doc. 37-3 at 10; Doc. 38 at 7.) On May 29, Winkler went to a hospital due to ongoing pain in her left shoulder. (Doc. 38 at 10.) Winkler claimed that the pain was related to her February accident at work. (*Id.*) The hospital referred Winkler to Dr. David Shenton at Ortho Montana. (*Winkler Depo. 85:3-15*, Doc. 37-5 at 23.) Winkler began receiving treatment from Dr. Shenton, and Dr. Shenton placed restrictions on Winkler's lifting and movement with her left arm. (Doc. 38 at 10.) Winkler was placed on modified duty at Home Depot. (*Id.*)

On May 31 and June 11, Winkler again missed work without enough leave to cover the absence. (*Winkler Depo. 148:22 – 149:12*, Doc. 37-5 at 38-39; *Time Detail at 13*, Doc. 37-3 at 13.) Due to the absences on May 9, May 31, and June 11, Winkler had a Counseling Session with her manager on June 12. (*Performance/Discipline Notice (June 12, 2013)*, Doc. 26-3 at 34.) Zeeck asked Winkler about the absences, and Winkler said the absences were due to her injury.

7

(*Winkler Depo. 149:20 – 150:9*, Doc. 37-5 at 39.) In her response to Home Depot's Statement of Undisputed Facts, Winkler also claims that her absences were the result of Home Depot's violations of her work restrictions and cites to her deposition, Zeeck's deposition, and her affidavit. (Doc. 38 at 7.) However, Winkler never claimed in her deposition that Home Depot assigned her tasks that violated her work restriction, and Zeeck denied that he would have asked Winkler to do so. (*See Winkler Depo. 148:22 – 150:12*, Doc. 37-5 at 38-39; *Zeeck Depo. 135:22 – 137:6*, Doc. 27-12 at 9-10.) As stated earlier, this Court will not consider statements contained in Winkler's affidavit.

Winkler again missed work without sufficient leave on June 25. (*Winkler Depo. 151:13 – 152:5*, Doc. 37-5 at 39; *Time Detail at 15*, Doc. 37-3 at 15.) Because of this absence, Winkler had a Final Counseling Session on July 1. (*Progressive Disciplinary Notice (July 1, 2013)*, Doc. 26-3 at 35.) At the meeting, Winkler was put on notice that another infraction of the attendance policy could result in her termination. (*Winkler Depo. 152:18 – 153:2*, Doc. 37-5 at 39-40.)

Winkler's shoulder injury did not improve as desired, and Dr. Shenton recommended that Winkler undergo surgery. (Doc. 38 at 11.) Beginning on July 29, 2013, Winkler requested and was given FMLA leave. (*Id.*) Winkler took 12 weeks of leave and returned on October 21, 2013, to the same job she had before her FMLA leave. (*Id.*) Winkler's work duties were modified to accommodate her

post-surgery lifting and reaching restrictions. (*Id.*) In her Statement of Disputed Facts, Winkler wrote that she "did not have the same benefits upon her return to work. See ¶¶ 54-56 below." (*Id.*) However, the Statement of Disputed Facts stops at ¶ 41.

Upon her return from FMLA leave, Winkler asked Zeeck for information regarding her attendance occurrences, and Zeeck provided her a copy of her outstanding violations. (Doc. 38 at 11-12.) Winkler claims that Zeeck told her that she was "out of the woods" for her absences and they had all "rolled off" except for two. (*Winkler Depo. 154:2-5, 160:1-10*, Doc. 37-5 at 40-41.) Zeeck denies making that statement. (*Zeeck Depo. 171:2-6*, Doc. 27-12 at 18.)

Winkler was absent again from October 24 through November 4 on approved vacation time. (*Winkler Depo. 170:19-25*, Doc. 37-5 at 44; *Stipulations*, Doc. 18 at 2.) At some point, Winkler reinjured her shoulder while trying to complete the job duties she had been assigned. (*Stipulations*, Doc. 18 at 2.) On December 3, 5, and 18, Winkler was absent from work and did not have sufficient leave. (*Winkler Depo. 156:10-24*, Doc. 37-5 at 40; *Time Detail at 19-20*, Doc. 37-3 at 19-20.) Winkler called Home Depot's "Aware Line" on December 12 to report that she was allegedly being retaliated against by her supervisors because of her injuries. (*Stipulations*, Doc. 18 at 3.)

9

On December 31, 2013, Winkler was summoned into a meeting in a back room. (*Winkler Depo. 153:9 – 154:19*, Doc. 37-5 at 40.) Deea Dahlquist, who had replaced Zeeck as Winkler's direct manager, was present in person, and Wadley appeared by telephone. (*Id.*) Wadley told Winkler that her continued absences had affected her ability to work. (*Id.*) Winkler explained her belief that her previous absences had rolled off. (*Id.*) Winkler asked if she was at the Final Counseling Session stage of Home Depot's policy. (*Id.*) Wadley told Winkler that she was terminated immediately. (*Id.*)

**D. Procedural History**

Winkler filed a four count Complaint against Home Depot in state court on December 22, 2014. (Doc. 7.) Count 1 alleges "Retaliation" in violation of the FMLA. (*Id.* at 11-12.) Counts 2-3 allege "Discrimination" in violation of the FMLA. (*Id.* at 12-15.) Count 4 alleges that Winkler's termination violated Montana's Wrongful Discharge from Employment Act. (*Id.* at 15-16.) Home Depot removed the action to this Court. (Doc. 1.)

Both parties now move for summary judgment. Winkler only moves for summary judgment on her FMLA claims. Home Depot moves for summary judgment on both the FMLA and Wrongful Discharge claims.

## II. Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

## III. Winkler's FMLA claims

Home Depot counters that Winkler cannot provide evidence that she suffered any negative consequences due to taking FMLA leave. Instead, Home Depot argues that the undisputed facts show that Winkler was fired solely due to

11

her absences. Winkler counters that there are several examples where Home Depot took negative action against her because she took FMLA leave.

"The FMLA creates two interrelated, substantive employee rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, an employee is entitled to twelve weeks of leave per year for qualifying events. 29 U.S.C. § 2612(a)(1). Relevant here, an employee can take FMLA leave due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Second, an employee who takes FMLA leave is entitled to return to the same or an equivalent position upon return from leave. 29 U.S.C. § 2614(a).

Two different subsections prohibit an employer from interfering with an employee's rights under the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 777-78 (9th Cir. 2011). Under 29 U.S.C. § 2615(a)(2), an employer shall not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." An allegation of a violation of § 2615(a)(2) is known as a "discrimination" or "retaliation" claim. *Sanders*, 657 F.3d at 777. Under 29 U.S.C. § 2615(a)(1), an employer shall not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." An allegation of a violation of § 2615(a)(1) is known as an "interference" or "entitlement" claim. *Sanders*, 657 F.3d at 777-78.

Actions where the plaintiff alleges that the employer failed to reinstate or considered the taking of FMLA as a negative factor in employment decisions are considered "interference" or "entitlement" claims under § 2615(a)(1). *Bachelder*, 259 F.3d at 1124. Under the plain language of § 2615(a)(2), "discrimination" or "retaliation" claims "do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder*, 259 F.3d at 1124. Winkler alleges that Home Depot took negative action against her for taking FMLA leave. Accordingly, even though Winkler names her causes of action as "discriminaion" and "retaliation" claims in her Complaint, they are actually "interference" or "entitlement" claims under § 2615(a)(1). This distinction is not solely academic. A claim under § 2615(a)(2) may require the application of the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 953 (D. Idaho 2012). Conversely, the Ninth Circuit explicitly rejected the application of the *McDonnell Douglas* framework to claims brought under § 2615(a)(1). *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003).

### A. Count 1

In Count 1, Winkler alleges that Home Depot took negative action against her because she took FMLA leave. Winkler alleges that Home Depot took "multiple adverse actions against her after she returned from leave" and that the

FMLA leave was a negative factor in terminating her employment. (Doc. 7 at 10-11.)

"Interference" under § 2615(a)(1) occurs when an employer uses "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); *Xin Liu*, 347 F.3d at 1133. A plaintiff need only prove by a preponderance of the evidence that the taking of FMLA-protected leave was such a negative factor. *Bachelder*, 259 F.3d at 1125. Winkler "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.*

Here, the Court finds that there is no competent evidence in the record that supports a claim that Home Depot used Winkler's FMLA leave as a negative factor in any employment decisions against her. Winkler points to Wadley's statement that he would discipline employees that took time off due to injuries and that Winkler knows other employees who Wadley "rode hard" after they got injured. (*Winkler Depo. 207:4-25*, Doc. 37-5 at 53.) Even assuming Wadley made that statement, Winkler does not point to an instance when she was disciplined or mistreated due to taking FMLA leave. Most of Winkler's supporting evidence would come from her affidavit. However, as discussed earlier, this Court will not consider the unsigned and non-notarized affidavit.

Winkler also does not point to any competent evidence in the record that her FMLA leave played a negative factor in her termination. Wadley told Winkler that she was fired due to her continued absences after the Final Counseling Session. The Court cannot find any evidence to support a conclusion that Home Depot also considered Winkler's FMLA leave when it terminated her employment. Winkler's impression that she was at a different level on Home Depot's progressive discipline process may factor into her Wrongful Discharge claim. However, the Court finds that the undisputed facts do not reveal a causal connection between Winkler's FMLA leave and her termination. Home Depot is entitled to summary judgment as to Count 1.

## B. Count 2

In Count 2, Winkler alleges that Home Depot "interfered with, restrained, and/or denied" Winkler's right to 12 weeks of medical leave under the FMLA. (Doc. 7 at 12.) However, the undisputed facts show that Winkler took the full 12 weeks of medical leave for her surgery. (*Winkler Depo. 103:14-25, 104:1-3*, Doc. 37-5 at 27.) The Court cannot find evidence that Home Depot denied Winkler the right to take leave under the FMLA. Home Depot is entitled to summary judgment as to Count 2.

15

## C. Count 3

In Count 3, Winkler alleges that Home Depot violated the FMLA when it failed to restore Winkler to her former position or an equivalent position upon her return to work. Home Depot argues that the undisputable facts show that Winkler was restored to her former position upon her return from FMLA leave. Winkler does not respond to this argument in her response brief. However, in her Statement of Disputed Facts, she disputes that she returned to the same job by stating that she "did not have the same benefits upon her return to work. See ¶¶ 54-56 below." (Doc. 38 at 11.) As discussed above, there are no ¶¶ 54-56 in the Statement of Disputed Facts. (*Id.* at 15.) Though Winkler does not substantively reference them in the Statement of Disputed Facts, Winkler attached three exhibits that indicate that Home Depot may have stopped contributing to Winkler's health insurance beginning on October 21, 2013. (*Billing Notice*, Doc. 37-6; *COBRA Enrollment Notice*, Doc. 37-7; and *Certificate of Group Health Plan Coverage*, Doc. 37-8.) The Court assumes that Winkler is arguing that Home Depot purposely stopped funding her group health insurance as retaliation for taking FMLA leave.

"[E]vidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Sanders*, 657 F.3d at 778. To establish a

prima facie case that the employer failed to reinstate the employee, the employee must show that:

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

*Id.* The employer's intent is irrelevant. *Id.*

Home Depot does not contest elements (1) through (4). The Court finds that Winkler has failed to establish the fifth element. The undisputed facts show that Winkler was restored to her job position upon her return from FMLA leave. (*Winkler Depo. 104:4-13*, Doc. 37-5 at 27.) The only issue is whether Home Depot removed Winkler's health insurance benefits as a consequence of taking FMLA leave.

The Court finds that Winkler does not establish an issue of fact to show that Home Depot stopped contributing to Winkler's health insurance as a result of her taking FMLA leave. In her deposition, Winkler could not recall when she opted out of Home Depot's insurance and switched to her husband's health insurance. (*Winkler Depo. 84:1 – 85:2*, Doc. 37-5 at 22-23.) Further, Winkler voluntarily switched to part time employment in November, after which she would not have been entitled to receive group health insurance. (*Winkler Depo. 116:14-25*, Doc. 37-5 at 30.) There is no other evidence in the record about the circumstances regarding why Home Depot stopped contributing to Winkler's health insurance.

17

Winkler does not establish a connection between her FMLA leave and the termination of benefits. Home Depot is entitled to summary judgment on Count 3.

## IV. Winkler's Wrongful Discharge Claim

In Count 4, Winkler alleges that Home Depot violated Montana's Wrongful Discharge from Employment Act when it fired her. Home Depot argues that the undisputed material facts show that Winkler had violated the attendance policy by missing work without excuse after the Final Counseling Session. Winkler argues that there was not good cause to discharge her as her manager told Winkler that her absences had "rolled off."

Montana's Wrongful Discharge from Employment Act states:

(1) A discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904. "Good cause" is defined as "reasonable job-related grounds for dismissal" based on either: (1) "failure to satisfactorily perform job duties"; (2) "disruption of the employer's operation"; or some other (3) "legitimate business reason." Mont. Code Ann. § 39-2-903(5).

A "legitimate business reason" is one that "is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537, 540 (Mont. 1991). While an employer has the important right to exercise discretion over who it will keep in its employ, *McConkey v. Flathead Electric Co-op.*, 125 P.3d 1121, 1126 (Mont. 2005), "[o]f equal importance [], is the legitimate interests of the employee to secure employment." *Buck*, 811 P.2d at 540.

The Court finds that there is a genuine issue of material fact as to whether Home Depot possessed a legitimate business reason that was not arbitrary or capricious when it fired Winkler. Winkler claims that her manager told her that she was "out of the woods" for her absences and that they had all "rolled off" except for two. (*Winkler Depo. 154:2-5, 160:1-10*, Doc. 37-5 at 40-41.) If true, Home Depot's manager signaled to Winkler that she only had two unexcused absences on her record. Another unexcused absence would put her in either the Coaching or Counseling stage of Home Depot's progressive discipline process. (Guidelines at 4, Doc. 26-3 at 20; SOP at 2, Doc. 26-3 at 25.) If true, Winkler reasonably would expect Home Depot to have another Final Counseling Session before terminating her employment. A rational jury could find that Home Depot lacked good cause to fire Winkler after her manager told her that she did not need to be concerned about her absences.

19

Home Depot denies that Winkler's manager told Winkler that she was in the clear regarding her absences. (*Zeeck Depo. 171:2-6*, Doc. 27-12 at 18.) The jury is required to make that credibility determination. *Reeves*, 530 U.S. at 150. The Court finds that this genuine issue of material fact precludes summary judgment on Winkler's Wrongful Discharge claim.

## V. Conclusion

Winkler does not point to any competent evidence that can show a connection between her FMLA leave and any negative action by Home Depot. There is a factual dispute over whether Home Depot misled Winkler and possessed good cause to discharge her. Accordingly, IT IS HEREBY ORDERED:

1. Winkler's Motion for Summary Judgment (Doc. 27) is DENIED.
2. Home Depot's Motion for Summary Judgment (Doc. 26) is GRANTED as to Counts 1-3, but DENIED as to Count 4.

DATED this 31st day of May, 2016.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge